## KING *et al. v.* DAVIS.

*(Supreme Court, General Term, First Department.* November 30, 1891.)

1. CORPORATIONS—LIABILITY OF OFFICERS—FRAUDULENT REPRESENTATIONS.

In an action to charge the president of a magazine publishing company with a debt of the corporation, on the ground that defendant fraudulently misrepresented the corporation as solvent when plaintiffs' debt was incurred, it appeared that its only property consisted of the right to publish the magazine, together with a contract to purchase it; that the company then owed between $5,000 and $8,000; that shortly before making the contract several executions for small accounts were issued against it, and returned unsatisfied; and that a few months later the right

to publish was sold on execution for less than $500. No explanation was given of these facts. *Held*, that it was error to refuse an instruction that insolvency at the time of the contract was established.

2. SAME—INSTRUCTIONS.

The evidence as to the making of the alleged false representations being conflicting, the plaintiffs were not entitled to an instruction that, if the facts proved tended necessarily to establish the probability of guilt, the jury must find for the plaintiffs.

3. SAME.

Plaintiffs were not entitled to a charge that if they inquired of defendant as to the condition of the company, and he failed to make the disclosure, that was a fraud upon them.

Appeal from circuit court, New York county. Reversed.

Action by Herbert Booth King and Frederick L. King against Alva E. Davis to charge him with personal liability for a debt of the American Magazine Publishing Company, of which he was president. Verdict and judgment for defendant, and order denying a motion for a new trial. Plaintiffs appeal.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Murphey & Metcalf*, (*Charles A. Murphey*, of counsel,) for appellants. *John Vincent*, for respondent.

DANIELS, J. The defendant was the president of a company known as the "American Magazine Publishing Company." It was incorporated with a paid-up capital of $5,000, and was engaged in the publication of the American Magazine. The plaintiffs' business was that of advertising agents, and they entered into a contract with the company to advertise the magazine in a large number of newspapers, for which they were to be paid by the company, in equal installments, the sum of $2,950, on the 20th of January and February, 1889. The contract for this publication was entered into on the 30th of November, 1888, and it was performed by the plaintiffs. But the notes which were given to pay for the advertisements were not paid, and judgments were recovered upon them against the company, upon which executions were returned unsatisfied. To render the defendant liable for the payment of this indebtedness, it was alleged in this action that he had fraudulently misrepresented to the plaintiffs the financial condition of the company, and that it was upon those misrepresentations that the plaintiffs were induced to enter into and perform their contract, and receive these notes from the company. To maintain their action, they relied for proof of the representations substantially upon their own evidence as witnesses; and the plaintiff Herbert Booth King, as to this part of the case, testified that prior to the making of the contract for the advertising of the magazine the defendant stated to him that the company had acquired money from a man living in Tarrytown amounting to the sum of $50,000, and that it was in a flourishing condition. The other plaintiff, Frederick L. King, also testified that the defendant stated that the company was prosperous, and was doing an increased business; that additional capital had come into the company from a contribution made by a person, who was referred to, but whose name was not given. To prove that the defendant intended to deceive the plaintiffs by the representations asserted to have been made, further evidence was given of other representations made by the defendant, placing the company, if they were true, in a financial condition entitling it to confidence and credit. The defendant himself, as well as another person who was present at the time of the interview, positively denied the making of these representations. And still others, who were examined as witnesses on behalf of the defendant, and related what they stated to be their recollection as to what was said, omitted from their statements these alleged representations. In this respect the case was consequently one for the determination of the jury, even with full effect given to the testimony of the witnesses sworn for the purpose of impeaching the defendant.

A further and equally important subject of proof was the financial condition of the company, in whose employment the defendant had been as its manager for several months prior to the time when he became its president. To establish its insolvency, judgments which had been recovered against the company were produced and read in evidence, upon which executions were issued and returned unsatisfied in the early part of the year 1889. One of these judgments was recovered upon an indebtedness stated to have been created on the 10th of November, 1888, amounting to the sum of $59.50. ˙ The summons in the action in which it was recovered was served upon the defendant on the 10th of November, 20 days prior to the time when the contract was entered into for the advertising with the plaintiffs. And judgment by default was entered in that action on the 22d of the same month, the action being in the third district court of the city of New York; and an execution upon this judgment was returned unsatisfied by the sheriff on the 21st of December, 1888. This recovery, and the return of the execution unsatisfied, was an indication certainly that the company had no property out of which this small amount could be collected by the sheriff. It also appeared that the company was not the owner of the magazine which its business consisted in publishing, but that it had acquired the right to publish it from another company. On the 20th of November the defendant purchased the stock of this company from Mr. Hazen, who was its preceding owner and the president of the company. And the defendant was asked, "Did the old company have anything else except its business to transfer at that time? *Answer.* You mean the American Magazine Publishing Company? *Question.* Yes. *A.* It had nothing but its business; no. *Q.* What was that? Merely the right to publish this magazine? *A.* It had the right to publish and a contract to purchase." When the defendant purchased the stock of the company from Mr. Hazen he gave him his note for the price; and Mr. Hazen testified that he had loaned and advanced to the company, a part of which money had been used by the defendant, the sum of $15,500. And a note was given to him by the defendant, as president of the company, for this money at the time when the stock was sold to him, which was the 20th of November, 1888. The defendant did not concede the validity of this indebtedness, although no reason was assigned which should bring it in question. But he did concede that the company was, for, other obligations, in debt on the 1st of December in the sum of from five to eight thousand dollars; and, as he had previously testified, what it chiefly owned was the right to publish the magazine. It appeared, further, from another judgment which was read in evidence, recovered in favor of the Exchange Printing Company, on the 19th of January, 1889, that an execution was issued upon it against the property of the defendant, which realized the sum of $449.12, and it was returned unsatisfied as to the residue of $449.27. This was early in February following the recovery of the judgment. And no explanation was given in any form of these facts, which would indicate that the company was in a solvent condition on the 30th of November, the time when the contract was made with the plaintiffs. It was neither contended nor shown that it had received any money other than that loaned to it by Mr. Hazen, and paid by him for the stock of the company, nor that it had any other property except the right to publish the magazine, and that which was seized under the execution issued upon the judgment of the Exchange Printing Company; and the evidence together supported the conclusion that the company must have been very largely insolvent at the time when these notes were made and delivered by it to the plaintiffs. And as its business had been under the management and control of the defendant prior to the time when he became its president, on the 20th of November, and was controlled and directed by him after that time, the conclusion seems to be well sustained that he must have known that to be the condition financially of this company.

At the close of the case the counsel for the plaintiffs asked the court "to

charge the jury that the evidence in this action establishes that on the 30th day of November, 1888, when this credit was given, that the American Magazine Company was insolvent." To that the court responded: "I do not think that there is any such evidence. It is for the jury to say whether they are satisfied that it was solvent or insolvent. It is not for me to say. On the evidence it is for the jury to say. I refuse to charge that, and leave it for the jury to say whether they are satisfied the company was solvent or insolvent." And the counsel then excepted to the refusal to charge, and to the modifications which were made. The further request was then made "to charge that such insolvency was then known to the defendant, who was the president of the company, and had chief management of its affairs." That was also left to the jury to say whether it was so or not, and to the refusal to charge this proposition the counsel also excepted. Certainly the first proposition was fully established by the evidence, that the company was insolvent on the 30th of November, 1888, and the plaintiffs had the right to have that charged as a fact in their favor. As to the second, the case is not so entirely clear; but at the same time the evidence appears to leave no ground for doubt but that the defendant must have been well aware of the financial condition of the company at the time when this contract was made.

Other requests were made, which were refused by the court, which are not entitled to any substantial consideration, for they embodied propositions which have not and cannot receive the sanction of the law. One of these was that, if the facts proved necessarily tend to establish a probability of guilt, it was the duty of the jury to find in favor of the plaintiffs. This request was clearly unsound, for a mere probability of guilt would not require the jury to find a verdict against the defendant. What is requisite for that purpose is that the guilt should be established to the satisfaction of the jury by the evidence produced upon the trial. Neither was it error to refuse the request that, if the plaintiffs inquired of the defendant as to the condition of the company, and he failed to make the disclosure, this was a fraud upon them; and the exception taken to what was stated to be a portion of the charge, that if the defendant stated that the company was solvent he was not liable, was not founded in fact, for that was no part of the charge given by the court. In this respect, while the charge may have been favorable to the defendant, it was free from all ground of legal exception. But, as to the insolvency of the company, that was a fact which was so conclusively proved as to be free from all possible controversy, and the charge which was requested on that fact should have been given to the jury. This was an important part of the plaintiffs' case, and it may be that the refusal to charge this proposition resulted in the verdict which was rendered in favor of the defendant. For this reason the judgment and order should be reversed, and a new trial directed, with costs to the plaintiffs to abide the event.